UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| VLINK, INC. | ) | CASE NO. 23-cv-00134 (KAD) |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| NEXGEN IOT SOLUTIONS, et al. | ) | JULY 15, 2024 |
| *Defendants*. | ) | |

**MEMORANDUM OF DECISION**
**RE: MOTION TO DISMISS (ECF NO. 53)**

Kari A. Dooley, United States District Judge:

Plaintiff VLink, Inc., ("VLink"), brings this action against NexGen IOT Solutions ("NexGen") and Sticky.IO ("Sticky") arising out of a series of events through which Sticky, with the purported assistance of NexGen, hired one of VLink's employees away from VLink. Plaintiff's claims sound in breach of implied contract (Count One); breach of the covenant of good faith and fair dealing (Count Two); tortious interference with contractual relations (Counts Three and Four); fraudulent misrepresentation (Counts Five and Six); negligent misrepresentation (Counts Seven and Eight); Civil Conspiracy (Counts Nine and Ten); unjust enrichment (Count Eleven); and violations of the Connecticut Unfair Trade Practices Act ("CUTPA") (Count Twelve). *See* Am. Comp., ECF No. 46. Pending before the Court is Defendants' motion to dismiss Count Twelve, the CUTPA Count. *See* Defs.' Mot. to Dismiss, ECF No. 53; Defs.' Mem. in Supp. ("Def.'s Mem."), ECF No. 53-1. For the reasons that follow, the motion is DENIED.

**Standard of Review**

To survive a motion to dismiss filed pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544,

570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 557). When reviewing a motion to dismiss, the court must accept well-pleaded factual allegations as true and draw "all reasonable inferences in the non-movant's favor." *Interworks Sys. Inc. v. Merch. Fin. Corp.*, 604 F.3d 692, 699 (2d Cir. 2010).

**Allegations**

Plaintiff, an information technology ("IT") consulting firm, places its employees with clients to provide a variety of services, including project management, software development, and others. Am. Compl. at ¶¶ 9–10. While Plaintiff can, and does, place its employees directly with clients, Plaintiff more routinely uses "preferred vendors" who act as intermediaries to place Plaintiff's employees with end clients. *Id.* at ¶ 11. NexGen was one such preferred vendor. *Id.* at ¶ 14. Plaintiff's employees occasionally experience brief gaps between the completion of one project and the commencement of the next. This gap time is called "benching." *Id.* at ¶ 12. During "benching," Plaintiff's employees remain subject to the terms and conditions of their employment agreements, which include a prohibition against soliciting Plaintiff's existing or potential clients for work. *Id.* at ¶ 13. Nor are Plaintiff's existing or potential clients, including preferred vendors such as NexGen, permitted to solicit Plaintiff's benched employees directly. They must negotiate all staffing placements through Plaintiff's approved procedures. *Id.* at ¶ 14.

Plaintiff hired Karthikeyan Santhanaraman ("Karthik") as a full-time employee in April 2018. *Id.* at ¶ 15. Karthik worked as a project manager and routinely developed and managed

project plans for Plaintiff's clients. *Id.* at ¶ 16. Plaintiff had a written employment agreement with Karthik which included a "Covenant Not to Compete" for a term of one year. *Id.* at ¶ 18.

On June 8, 2022, one of Plaintiff's employees submitted Karthik's resume for an online job posting. *Id.* at ¶ 19. That same day, NexGen contacted the employee to provide additional information about the job for which Karthik's resume had been submitted. *Id.* at ¶ 20. Plaintiff's employee advised NexGen that Karthik was being submitted for the "corporation-to-corporation" ("C2C") contract role at a rate of $100 per hour. *Id.* at ¶ 21. After some negotiation, NexGen offered a payment rate of $82 per hour, which Plaintiff accepted. *Id.* at ¶ 22. Thereafter, NexGen indicated that it would "screen" Karthik for submission to its client, Sticky. *Id.* NexGen then scheduled Karthik for an interview with Sticky without informing Plaintiff. *Id.* at ¶ 23.

Ordinarily, when negotiating C2C placements as was contemplated with Karthik, the preferred vendor (NexGen) will notify the subcontractor (Plaintiff) of a candidate's successful screening. *Id.* at ¶ 25. Thereafter, the subcontractor will coordinate with the preferred vendor's client (Sticky) to schedule the interview for its employee. *Id.* These procedures were not followed with respect to Karthik's proposed placement with Sticky. *Id.* at ¶ 26. Plaintiff learned of Karthik's interview only after it had taken place. *Id.* at ¶ 27. Upon learning of the interview, on June 18, 2022, Plaintiff contacted NexGen seeking "client feedback" on Karthik's interview. *Id.* at ¶ 28. NexGen responded "Sure. Waiting for feedback. Might be receiving it today." *Id.* at ¶ 29. Between June 18, 2022, and June 23, 2022, NexGen did not respond to any of Plaintiff's many inquiries about Karthik's placement. *Id.* at ¶ 30.

Unbeknownst to Plaintiff, Sticky offered Karthik a full-time position. On June 22, 2022, Karthik terminated his employment with Plaintiff. Plaintiff learned that Sticky had offered Karthik full time employment on June 23, 2022. *Id.* at ¶¶ 31–33. Thereafter, Plaintiff contacted NexGen:

3

"I am trying to reach you but not able to connect. Please call me. I knew he got offer from client, but you didn't inform me." NexGen did not respond. *Id.* at ¶ 34.

Both Sticky and NexGen knew Karthik had an employment contract with Plaintiff. *Id.* at ¶ 35–36. Neither NexGen nor Sticky advised Plaintiff that the job posting was for a full-time employee, rather than a C2C contract placement. *Id.* at ¶ 38. Had Plaintiff been advised that the posting was not for C2C placement, it would not have submitted Karthik's resume for consideration. *Id.* at ¶ 39. Plaintiff relied upon the false representations by NexGen and Sticky that the posting was for a C2C placement. *Id*. at ¶ 40. Neither NexGen nor Sticky compensated Plaintiff for Karthik's acquisition by Sticky. *Id.* at ¶¶ 46–54.

In sum and substance, Plaintiff alleges that NexGen and Sticky deceived Plaintiff into believing that Karthik was being considered for a C2C placement; that they did so in order to interfere with the employment agreement between Karthik and Plaintiff; that Plaintiff relied to its detriment on NexGen's and Sticky's false representations; that NexGen and Sticky conspired together to accomplish these tortious goals; and that all of this conduct violates CUTPA.

**Discussion**

CUTPA provides: "No person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Conn. Gen. Stat. § 42–110b(a). "Any person who suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment of a method, act or practice prohibited by section 42–110b, may bring an action" to recover actual damages, punitive damages, and equitable relief. Conn. Gen. Stat. 42–110g(a). Connecticut applies the Federal Trade Commission's so-called "cigarette rule" to determine whether a practice is unfair under CUTPA. *Fabri v. United Techs. Int'l, Inc.*, 387 F.3d 109, 119–120 (2d Cir. 2004). Under the cigarette rule courts examine three factors: "(1)

4

Whether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise[—]whether, in other words, it is within at least the penumbra of some common law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers [ (competitors or other businessmen) ]." *Id.* (quoting *Cheshire Mortgage Serv. Inc. v. Montes,* 223 Conn. 80, 105–106 (1992)). A plaintiff need not establish all three criteria to demonstrate unfairness, and a practice may be shown to be unfair either "because of the degree to which it meets one of the criteria or because to a lesser extent it meets all three." *Id.* at 120 (internal quotation marks omitted). The practice at issue may be "actually deceptive," or "'a practice amounting to a violation of public policy.'" *Id.* "Because CUTPA is a self-avowed 'remedial' measure, General Statutes § 42–110b (d), it is construed liberally in an effort to effectuate its public policy goals." *Sportsmen's Boating Corp. v. Hensley,* 192 Conn. 747, 756 (1984).

In cases involving claims of breach of contract, the same facts that establish a breach of contract claim may be sufficient to establish a CUTPA violation. *See Ulbrich* v. *Groth*, 310 Conn. 375, 410 (2013); *Medical Device Solutions, LLC* v. *Aferzon*, 207 Conn. App. 707, 777, *cert. denied*, 340 Conn. 911 (2021). However, it is equally clear that "not every contractual breach will rise to the level of a CUTPA violation." *Naples* v. *Keystone Building & Development Corp.*, 295 Conn. 214, 228 (2010). Generally, there must also be present some aggravating circumstances or unscrupulous conduct, in addition to a failure to meet contractual obligations. *Id.* at 229. *See also Pointe Residential Builders BH, LLC v. TMP Constr. Grp., LLC,* 213 Conn. App. 445, 454 (2022) (Discussing the relevant factors where CUTPA claim is premised on breach of contract.).

5

Finally, a CUTPA claim premised in part on allegations of tortious interference is routinely recognized as within CUTPA's scope. "This court has recognized that, although '[c]onduct that might be actionable under CUTPA may not rise to a level sufficient to invoke tort liability ... [t]he reverse of that proposition ... is seldom true.' … Indeed, we have noted that 'it is difficult to conceive of a situation where tortious interference would be found but a CUTPA violation would not.'" *Landmark Inv. Grp., LLC v. CALCO Const. & Dev. Co.*, 318 Conn. 847, 881 (2015) (internal citations omitted.).

Defendants argue that the allegations do not rise to the level of a CUTPA violation; that the case involves a single instance of conduct and that the case, at its core, is a breach of contract claim. Plaintiff argues otherwise. *See* Defs.' Mem. at 3–7. The court agrees with Plaintiff.

Although Plaintiff asserts two claims rooted in contract—breach of an implied contract and breach of the covenant of good faith—the allegations go beyond these two claims. As detailed above, Plaintiff alleges that both Defendants, acting in concert and with deceit, intentionally bypassed the contractual (express or implied) relationship between them, as well as industry practice, in an effort to hire Plaintiff's employee away from Plaintiff. Plaintiff alleges that Defendants lied to Plaintiff in this effort to conceal the events as they were unfolding and did so in order to avoid having to pay Plaintiff for the employee's services if offered through Plaintiff. Plaintiff further alleges that NexGen, when revealed to have participated in this breach of contract, tortious interference, civil conspiracy, and fraud, falsely disclaimed any involvement and refused to pay to Plaintiff the amount due had the employee been placed as a full-time employee with Sticky through appropriate and available processes.

Whether Plaintiff will be able to establish that Defendants acted with such nefarious intent will be for the fact finder. But the Amended Complaint adequately alleges a violation of CUTPA.

6

**Conclusion**

For the foregoing reasons, Defendants' motion to dismiss Plaintiff's CUTPA claim (Count Twelve) is DENIED.

**SO ORDERED** at Bridgeport, Connecticut, this 15th day of July 2024.

                                          */s/ Kari A. Dooley*
                                          KARI A. DOOLEY
                                          UNITED STATES DISTRICT JUDGE